CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

OCT 1 0 2006

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:05CR00043-001 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| ANTONIO GUZMAN-PLATON, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with knowingly and intentionally combining, conspiring, confederating and agreeing with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: 1) to possess with intent to distribute and to distribute a quantity of a mixture or substance containing five hundred (500) grams or more of a detectable amount of methamphetamine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A); All in violation of Title 21, United States Code, Section 846; in Count Two with unlawfully, knowingly and intentionally distributing or possessing with intent to distribute, or aiding and abetting in the distribution or possession with intent to distribute, a quantity of a mixture or substance containing five hundred (500) grams or more of a detectable amount of methamphetamine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A), and Title 18, United States Code, Section 2; in Count Three with being an alien illegally or unlawfully in the United States, did knowingly and

intentionally posses or receive a firearm which was shipped or transported in interstate or foreign commerce, all in violation of Title 18, United States Code, Section 922(g)(5);

and in Count Four a forfeiture allegation which provides that defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461, all firearms and ammunition involved in the commission of the offense stated in Count Three. The property subject to forfeiture, without regard to the type of interest held, wherever located and in whatever name held, includes but is not limited to the Marlin Rifle, .22 caliber seized on or about June 24, 2005.

On September 27, 2006, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts One, Three and Four of the Indictment. The government has agreed to dismiss Count Two of the Indictment upon acceptance of plaintiff's guilty plea.

At this hearing, the defendant was placed under oath and testified that his full legal name is Antonio Guzman-Platon, that he was born in Mexico on March 5, 1974, and that he completed high school in Mexico. The defendant stated that he cannot read or write the English language; however, he can understand the English language "a little bit."[1] The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that she had no reservations as to the defendant's competency to enter a plea of guilty to the offenses.

The defendant testified that he had received a copy of the Indictment pending against him and

---

[1] An interpreter assisted the defendant during the hearing.

2

that he had fully discussed the charges therein, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged in Counts One, Three and Four are felonies, and that if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 per felony count and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant acknowledged that he consented to the forfeiture of property as set forth in the plea agreement and that such a forfeiture of property is proportionate to the degree and nature of the offenses he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in Counts One, Three and Four, including any facts related to sentencing. The defendant further testified that he knew that the government retained the right to appeal any sentence the court imposed that was below the applicable sentencing guideline range or below the government's recommended sentence. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is

3

withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged in Count One, is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was informed that Count One has a mandatory sentence of ten years imprisonment, together with supervised release. The defendant was also informed that the maximum possible penalty for Count Two is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was further informed that Count Two has a mandatory sentence of ten years imprisonment, together with supervised release. The defendant was informed that maximum possible penalty for Count Three is ten years imprisonment and a fine of $250,000, together with supervised release. Finally, the defendant was informed that Count Four is a forfeiture allegation which calls for the forfeiture of the firearm seized on June 24, 2005.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties

under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG 3E1.1(b). The defendant stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant stated that he understood that a determination as to whether he had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant stated that he was aware that pursuant to the Sentencing Guidelines the sentencing judge could add or subtract up to four sentencing points to his sentencing level based upon his role in the offense, and defendant informed the court that he and the government had agreed that his base offense level would not be increased based upon his role in the offense. The defendant stated that he understood that the government would not object to him being given the benefit of sentencing under the "safety valve" provisions of USSG § 5C1.2 and Title 18, United States Code, Section 3553, if he meets the criteria up to and including the time of his sentencing. The defendant stated that he and the government agreed that for purposes of USSG §§ 2D1.1 and 1B1.3 he would be held responsible for 919.9 grams of a substance containing a detectable amount of methamphetamine. The defendant stated that he was aware that two sentencing points could be added to his sentencing level based upon his possession of a dangerous weapon and that he and the government had agreed that his base offense would not be increased based upon the recovery of the firearm from his bedroom. The defendant was informed that the government will recommend that he receive a sentence of incarceration at the low end of the applicable sentencing guidelines range. Defendant stated he understood that the location for service of any term of imprisonment is

5

ultimately determined by the Bureau of Prisons, but he was aware that to the extent it was consistent with Bureau of Prisons' applicable rules and regulations, the government would not object to any request he might make to be confined at a community correctional facility.

The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

6

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.[2]

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been "very effective." The defendant testified that he understood the possible consequences of his plea.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

Since September/October of 2004, a Confidential Informant ("CI") had made numerous purchases of methamphetamine from a person known as "Mean Mexican" and later identified as Zadot Guzman, the defendant's brother. Almost all of the purchases took place at 310 Ortman Road, in Greenwood, Virginia, the residence of defendant Antonio Guzman-Platon. Within 72 hours of June 24, 2005, the CI had purchased methamphetamine from Zadot Guzman at the 310 Ortman Road residence. On June 24, 2005, the CI telephoned Zadot Guzman and ordered ½ pound of methamphetamine. The CI told Zadot that he would be by the 310 Ortman residence around 12:00 p.m. Police obtained a search warrant for the residence and executed the warrant at approximately 12:00 p.m. When police arrived, two Hispanic males were located in the lower driveway area: the defendant and his brother, Zenaido Guzman-Platon. The defendant was patted down for officer safety. During the pat down search, police

---

[2]Defendant would not possess these rights which appertain only to citizens.

recovered 224.7 grams (approximately ½ pound) of methamphetamine from the defendant's left front pants pocket. The only other people at the defendant's residence were the defendant's wife, who was in the backyard, and the defendant's two children, ages five and seven, who were inside the home. A subsequent search of the house revealed 222.7 grams of methamphetamine, scales, plastic baggies, as well as other drug indicia. In addition, police recovered a plastic baggie containing 26.2 grams of methamphetamine inside the house, with the weight and price written on it. Police also recovered a fruit roll-up box under a play set in the lower driveway, containing 446.2 grams of methamphetamine. Inside one of the bedrooms, police recovered a Marlin .22 caliber rifle. After the search, the defendant was mirandized. The defendant stated that he lived at 310 Ortman Road, that the rifle was his and that he was holding the methamphetamine found on his person for someone else. At the time of his arrest, the defendant was an illegal alien from Mexico. The Marlin .22 caliber rifle had been manufactured outside the state of Virginia.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charges and the consequences of his plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One, Three and Four of the Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

8

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One, Three and Four and adjudge him guilty of those offenses. A sentencing hearing hereby is scheduled for December 18, 2006 at 10:00 a.m. before the presiding District Judge in Charlottesville.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

10-10-06
Date

9